# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

PIONEER HI-BRED INTERNATIONAL,    )
INC.; CORTEVA AGRISCIENCE, LLC;    )
AGRELIANT GENETICS, LLC; BECK'S    )
SUPERIOR HYBRIDS, INC.; and    )
WINFIELD SOLUTIONS, LLC,    )
     )
    Plaintiffs,    )
     )    Case No. 8:22-cv-00070
v.    )
     )
ALTEN, LLC; MEAD CATTLE    )
COMPANY, LLC; GREEN DISPOSAL    )
MEAD, LLC; PLATTE RIVER GREEN    )
FUELS, LLC; and TANNER SHAW, in his    )
Individual and official capacities,    )
EARTH ENERGY &    )
ENVIRONMENT, LLC; ALTEN    )
OPERATING COMPANY, LLC;    )
INTEGRATED RECYCLING, LLC;    )
E3 BIOFUELS, LLC; FALCON    )
ENERGY, LLC; and MEAD    )
ACQUISITION COMPANY, LLC,    )
     )
    Defendants.    )

---

SYNGENTA SEEDS, LLC,    )
     )
    Plaintiff,    )
     )
v.    )    Case No. 8:22-cv-00071
     )
ALTEN, LLC; MEAD CATTLE    )
COMPANY, LLC; GREEN DISPOSAL    )
MEAD, LLC; PLATTE RIVER GREEN    )
FUELS, LLC; TANNER SHAW and    )
SCOTT TINGELHOFF,    )
     )
    Defendants.    )

---

Exhibit 1

BAYER US LLC,                           )
                                        )
      Plaintiff,                 )
                                        )
v.                                      )       Case No. 8:22-cv-00082
                                        )
ALTEN, LLC; MEAD CATTLE                 )
COMPANY, LLC; GREEN DISPOSAL            )
MEAD, LLC; PLATTE RIVER GREEN           )
FUELS, LLC; and TANNER SHAW, in his     )
Individual and official capacities,     )
                                        )
      Defendants.                )

_____

## AMENDED COMPLAINT AND JURY DEMAND

COME NOW Plaintiffs Pioneer Hi-Bred International, Inc. ("Pioneer"); Corteva

Agriscience, LLC ("Corteva"); AgReliant Genetics, LLC ("AgReliant"); Beck's Superior

Hybrids, Inc. ("Beck's"); and Winfield Solutions, LLC, ("Winfield") (together, "Plaintiffs") by

and through the undersigned counsel, bring this Amended Complaint against the above-named

Defendants and allege as follows:

## INTRODUCTION

1.     Plaintiffs bring this action seeking indemnification, contribution, and contract and

other damages from the parties responsible for both the environmental conditions at the site of

the AltEn ethanol plant in Mead, Nebraska and the costs Plaintiffs have been incurring to

respond to those conditions and stabilize the site.

2.     Defendants AltEn, LLC ("AltEn"); Mead Cattle Company, LLC ("Mead Cattle");

Green Disposal Mead, LLC ("Green Disposal"); Earth, Energy, & Environment LLC ("E3");

AltEn Operating Company, LLC ("AltEn Operating Company"); Integrated Recycling, LLC

("Integrated Recycling"); E3 Biofuels, LLC, ("E3 Biofuels"); Falcon Energy, LLC ("Falcon

Energy"); and Mead Acquisition Company, LLC ("Mead Acquisition") operated at the site of the

AltEn plant, worked together as a "closed-loop" system comprising an ethanol plant, cattle feedlot, and biochar production unit, and/or conducted other related operations. Defendant Tanner Shaw is, or was at relevant times, the President of AltEn, Mead Cattle, Green Disposal, E3 Biofuels, and Falcon Energy, and is, or was at relevant times, vice president of Integrated Recycling, LLC and all are under his direction and control.

3.     As explained in the Factual Background section, *infra*, Pioneer, AgReliant, Beck's, and other seed companies entered into agreements with AltEn to supply corn and other seed to AltEn for use in its ethanol manufacturing process. Winfield did not enter into a contract with AltEn, but since 2015, Winfield has supplied corn and other seed to AltEn for use in its ethanol manufacturing process.

4.     AltEn failed to properly handle, store, and otherwise manage the seed and the byproducts from the ethanol manufacturing process in violation of federal and state laws and AltEn's contractual commitments to Pioneer, AgReliant, and Beck's, and AltEn's commitments to Winfield. These and other failures led to the release of untreated wastewater from a tank at the AltEn plant that flowed onto neighboring properties, the stockpiling of thousands of tons of wet cake byproduct, and the mismanagement of millions of gallons of wastewater in lagoons perilously close to failure.

5.     Instead of complying with various emergency orders issued by the Nebraska Department of Environment and Energy ("NDEE") and engaging in remediation efforts, AltEn and its officers and affiliates – led by Tanner Shaw – have (i) abandoned the site, (ii) sold off their assets to prevent their creditors (including the State and Plaintiffs) from having access to assets necessary to perform remediation and reimburse Plaintiffs for the costs they have incurred at the site, (iii) hindered the response and stabilization efforts, and (iv) refused to undertake or

3

participate in any way in ongoing response and stabilization activities performed by Plaintiffs and other seed companies.

6.     Defendants abandoned the site and proceeded to dissipate their assets to avoid any responsibility for the conditions they caused. Plaintiffs have incurred millions of dollars in costs to perform a wide range of response actions under the oversight of the NDEE in an effort to stabilize the site.

7.     Now Plaintiffs seek relief against AltEn and all Defendants to contribute to the costs they caused, are responsible for, and have thus far willfully avoided.

## **PARTIES**

*Plaintiffs*

8.     Plaintiff Pioneer Hi-Bred International, Inc. ("Pioneer") is incorporated in and has its principal place of business in Iowa.

9.     Plaintiff Corteva Agriscience, LLC ("Corteva") is a Delaware limited liability company.  For jurisdictional purposes, its members are citizens of the states of Iowa, Delaware, and Indiana. Corteva and Pioneer are corporate affiliates.

10.     Plaintiff AgReliant Genetics, LLC ("AgReliant") is a Delaware limited liability company with its principal place of business in Westfield, Indiana. AgReliant's members are GLH Seeds Inc., a Michigan corporation with its principal place of business in Bloomington, Minnesota, and Vilmorin USA Corp., a Delaware corporation with its principal place of business in Westfield, Indiana.

11.     Plaintiff Beck's Superior Hybrids, Inc. ("Beck's") is incorporated in and has its principal place of business in Indiana.

4

11.     Plaintiff Winfield Solutions, LLC ("Winfield") is a Delaware limited liability company having its principal place of business in Minnesota. Winfield's only member, Land O'Lakes, Inc., is incorporated in Minnesota with its principal place of business in Minnesota.

*Defendants*

12.     Defendant Tanner Shaw ("Shaw") is an individual who, upon information and belief, is domiciled in and is a citizen of either the State of Kansas or the State of Missouri. Shaw is the individual at the center of a complex web of companies related to the AltEn ethanol plant. Shaw's relations to the entity defendants are as set out hereinafter.  Until at least 2021, Shaw listed 5225 Renner Road, Lake Quivira, Kansas ("the Quivira Mansion") as his mailing address and that of many of the entity defendants. At all relevant times, Shaw was the President, corporate officer, and/or corporate representative of all corporate entities named as Defendants herein.

13.     Defendant AltEn, LLC ("AltEn") is a Kansas limited liability company.  AltEn owns and operated an ethanol manufacturing plant located at 1344 County Rd. 10, Mead, Nebraska 68041 ("AltEn Facility").

14.     In the most recent corporate filing for AltEn in Kansas, Shaw executed the document as "Authorized Person."  For jurisdictional purposes, Plaintiffs are informed and believe that AltEn is a citizen of Kansas and South Dakota premised on the following allegations:

> a.  AltEn has not publicly disclosed the identity of all of its members.  Under Kansas law, Kansas LLCs are, however, required to identify in annual reports those members who hold an interest of 5% or greater.  AltEn

5

disclosed that Defendant Platte River Green Fuels, LLC ("Platte River Green Fuels") was the only such member.

i.  Platte River Green Fuels is also a Kansas LLC.  Its official mailing address on record with the Kansas Secretary of State is the Quivira Mansion.  The two members who hold a 5% or greater interest in Platte River Green Fuels are E3 Platte River, LLC and Falcon Energy, LLC.  The official mailing address on record with the Kansas Secretary of State of those entities is the Quivira Mansion.

   1.  Falcon Energy, LLC is a Delaware LLC.  Delaware does not require LLCs to identify their members.  Because the mailing address for Falcon Energy, LLC is the Quivira Mansion, plaintiffs allege on information and belief that its members are citizens of Kansas.

   2.  E3 Platte River, LLC is a Kansas LLC.  Its official mailing address on record with the Kansas Secretary of State is the Quivira Mansion. The two members who hold a 5% or greater interest are Falcon Energy, LLC and E3 BioFuels, LLC.  The official mailing address on record with the Kansas Secretary of State of those entities is the Quivira Mansion.

      a.  E3 BioFuels, LLC is a Delaware LLC.  Delaware does not require LLCs to identify their members.  In the reported decision *of E3 Biofuels, LLC, v.*

*Biothane, LLC,* 6 F. Supp. 3d 993 (D. Neb. 2014), in asserting the availability of diversity jurisdiction this entity contended that it was a citizen of Kansas and South Dakota.

b. The second member of E3 Platte River, LLC is the aforementioned Falcon Energy, LLC a Delaware LLC whose members plaintiffs allege on information and belief are citizens of Kansas.

15.     Defendant Mead Cattle Company, LLC ("Mead Cattle") is a Nebraska limited liability company.  Mead Cattle owned and operated a cattle feedlot located adjacent to the AltEn Facility property at times relevant to this action.

16.     Mead Cattle's most recent filing with the Nebraska Secretary of State was submitted by Shaw as President.  Nebraska does not compel the disclosure of members of LLCs. Plaintiffs allege on information and belief that given Shaw's role that Mead Cattle is a citizen of Kansas.

17.     Defendant Green Disposal Mead, LLC ("Green Disposal") is a Nebraska limited liability company. Green Disposal owned and operated a biochar production unit on the AltEn Facility property.

18.     Green Disposal's most recent filing with the Nebraska Secretary of State was submitted by Shaw as President.  Nebraska does not compel the disclosure of members of LLCs. Plaintiffs allege on information and belief, given Shaw's role, that Green Disposal is a citizen of Kansas.

19.     E3 is a Kansas limited liability company. E3 retains the bulk of cash assets of AltEn, Mead Cattle, and Green Disposal and is a member of AltEn. Money is transferred from E3's accounts to the Defendant entities and other parties, including transfers related to AltEn's, Mead Cattle's, and Green Disposal's payroll.

20.     E3's most recent filing with the Kansas Secretary of State was submitted by The Langley Group, Ltd., which is named as the only member that holds a 5% or greater interest in E3. Upon information and belief, Dennis Langley (now deceased) is also a member of E3. Since the filing of the original complaint in this matter, E3 changed its official mailing address to PO Box 3243, Kansas City, Kansas 66103, which is the same address as the Langley Group, Ltd.

21.     AltEn Operating Company is a Missouri limited liability company. Upon information and belief, individuals providing labor and services in furtherance of the operations of AltEn, Mead Cattle, and Green Disposal at the AltEn Facility were employees of AltEn Operating Company and were paid by AltEn Operating Company.

22.     AltEn Operating Company's most recent filing was submitted by its registered agent, and Missouri does not compel the disclosure of members of LLCs.  Upon information and belief, E3 is a member of AltEn Operating Company. AltEn Operating Company's principal office address is 1344 County Road 10, Mead, Nebraska, 68041 (the same as the AltEn Facility), and its registered agent's address is 4510 Belleview Avenue, Suite 300, Kansas City, Missouri 64111.

23.     Upon information and belief, Integrated is a Delaware limited liability company registered to do business in Nebraska. Integrated handled the debagging of Plaintiffs' seed for AltEn, Mead Cattle, and Green Disposal at the AltEn Facility.

24.     Integrated has not disclosed its members. Upon information and belief, however, E3 is a member of Integrated. Its principal office address listed with the Nebraska Secretary of State is located at the Quivira Mansion.

25.     Upon information and belief, E3 Biofuels is a Delaware limited liability company, and its known member is E3.  E3 has two known members, Dennis Langley and Langley Group, Ltd., a Kansas for-profit corporation with an address located at the Quivira Mansion.

26.     Upon information and belief, Falcon Energy is a Delaware limited liability company with an address at the Quivira Mansion.

27.     Upon information and belief, Mead Acquisition is a Delaware limited liability company. Upon information and belief, Shaw, a citizen of either the State of Kansas or the State of Missouri, is a member of Mead Acquisition.

28.     Based upon information readily available to Plaintiffs, all corporate entity Defendants named herein, share officer, members, and principal office and/or registered agent addresses.

## JURISDICTION AND VENUE

29.     This Court has diversity jurisdiction over the claims in this case pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds $75,000.00, exclusive of interest and cost. Complete diversity of citizenship exists.

30.     The rule of citizenship for the business entities that are parties herein is as stated in *E3 Biofuels, LLC, v. Biothane, LLC,* 6 F. Supp. 3d 993, 998 (D. Neb. 2014), concerning one of the affiliates of defendants here:

> A corporation is a citizen of the state of its incorporation and the state of its principal place of business. *GMAC Commercial Credit LLC v. Dillard Department Stores, Inc.,* 357 F.3d 827, 828 (8th Cir.2004). An LLC is a citizen of every state of which one of its

members is a citizen, but is not a citizen of its state of organization unless a member of the LLC is a citizen of that state. *Id.* at 829; *OnePoint Solutions, LLC v. Borchert,* 486 F.3d 342, 347 n. 4 (8th Cir.2007).

31.     As measured by those rules, Plaintiffs are citizens of the states of Delaware, Iowa, Minnesota, Michigan, and Indiana.  Defendants are citizens of the states of Kansas, Missouri, Nebraska, and South Dakota.

32.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL BACKGROUND

### The AltEn Facility

33.     The AltEn Facility in Mead, Nebraska began ethanol manufacturing operations on or about January 9, 2015 and used grain (primarily corn) to produce approximately 24,000,000 gallons of ethanol annually.

34.     Mead Cattle owned and operated a cattle feedlot located on the immediate adjacent property to the AltEn Facility and was designed to function with the AltEn Facility as a "closed-loop" system in which Mead Cattle's feedlot would transfer manure to the AltEn Facility, AltEn's two digesters would then turn the manure into methane used to power its ethanol production, and AltEn would convey byproduct from the ethanol production, known as wet distiller's grains, to Mead Cattle's feedlot as feed for the cattle.

35.     Green Disposal owned a biochar unit at the AltEn Facility at all times relevant to this action.  The biochar unit heated ethanol production byproduct to create another charcoal-like byproduct known as biochar, which can be used as a soil amendment.

36.     The biochar was stored in large totes made of a flexible, woven fabric called supersacks.

10

37.     AltEn used the biochar unit to process some of the distiller's grain it stored. AltEn allowed the remaining distiller's grain to continue to pile up at the AltEn Facility.

38.     The AltEn Facility and Mead Cattle occupied two adjacent lots and shared several common easements.

39.     The AltEn Facility, Mead Cattle, and Green Disposal shared an entrance onto the property, and Mead Cattle owned only entry points.

40.     The AltEn Facility and Mead Cattle shared a natural gas pipeline.

### Pioneer's Contract with AltEn

41.     AltEn advertised what it called a "Green Recycling Program" to agricultural companies, such as Pioneer, under which the companies would supply corn, wheat, sorghum, milo seed, and other grains (collectively, "Seed") to AltEn for use in its ethanol manufacturing process.

42.     Pioneer, AgReliant Genetics, Bayer U.S., Beck's, Syngenta Seeds, and Winfield (collectively, "Seed Companies") were among the companies that sent Seed to the AltEn Facility.

43.     Pioneer and AltEn entered into a Memorandum of Understanding ("MOU") to govern the transfer of Seed to AltEn. A copy of the MOU is attached as Exhibit 1.

44.     The MOU provides that Pioneer will supply certain quantities of Seed to AltEn for purposes other than for planting and in a manner that complies with all applicable laws.

45.     Under the MOU, AltEn warrants and represents the following:

6(a) The Seed accepted from [Pioneer] shall not be sold or offered for sale or any other use by [AltEn] within the United States.

(b) The Seed accepted from [Pioneer] shall not be sold or offered for sale or any other use by [AltEn] outside of the United States.

(c) The Seed accepted from [Pioneer] SHALL NOT BE USED FOR FOOD, FEED, SEED OR OIL PURPOSES.

11

(d) NO Co-products from the Seed, including, but not limited to wet distillers grains with solubles (WDGS), dry distillers grains with solubles (DDGS); modified distillers grains with solubles (MDGS), Condensed distillers solubles (CDS), syrup, thin stillage SHALL BE USED FOR FOOD, FEED, SEED OR OIL PURPOSES.

(e) Unless or until a Co-product use is approved as a part of User's current and approved operating permits with the Nebraska Department of Environment and Energy, all Co-Products derived from the Seed provided under this agreement shall be used as a landfill cover or landfilled locally.

8. User warrants and represents that it will comply with all applicable federal, state, and local laws along with the rules and regulations governing the transportation, handling, storage, and use (including those which become effective after the date of this MOU). Without limiting the foregoing User **WARRANTS AND REPRESENTS THAT NONE OF THE SEED WILL BE USED FOR PLANTING, BREEDING or RESEARCH PURPOSES.**

46.     The MOU also provides that AltEn will indemnify Pioneer for damages arising out of AltEn's nonperformance of the MOU:

9. User shall indemnify and hold harmless the Supplier, its officers, directors, employees, agents, successors, and assigns and all those identified in interest therein from any and all fines, suits[,] claims, liabilities, losses, damages, injuries, penalties, costs, and expenses either to person or property which may be incurred by or imposed upon User an[d] [sic] arising out of or related in any manner to the nonperformance of this MOU by User.

**AgReliant's Contracts with AltEn**

47.     AgReliant and AltEn entered into a Renewable Resource Material Purchase Agreement dated September 22, 2015 under which AgReliant agreed to sell, and AltEn agreed to purchase, AgReliant's corn seed for use in the production of ethanol (the "AgReliant/AltEn Purchase Agreement"). A true and accurate copy of the AgReliant/AltEn Purchase Agreement is attached as Exhibit 2.

48.     Additionally, AgReliant and AltEn entered into two Renewable Resource Material Disposal Agreements, dated May 21, 2018 and April 1, 2019 respectively, under which AgReliant agreed to send to AltEn's facility, and AltEn agreed to purchase, AgReliant's corn

12

seed for use in the production of ethanol (the "AgReliant/AltEn Disposal Agreements"). True and accurate copies of the AgReliant/AltEn Disposal Agreements are attached as Exhibit 3. The AgReliant/AltEn Purchase Agreement and the AgReliant/AltEn Disposal Agreements are substantially identical insofar as the obligations of the parties to one another. The AgReliant/AltEn Purchase Agreement and the AgReliant/AltEn Disposal Agreements are collectively referred to herein as the "AgReliant/AltEn Agreements."

49.     The AgReliant/AltEn Agreements provide that AltEn will purchase certain quantities of AgReliant's corn seed (referred to as RRM) to be used by AltEn solely in the production of ethanol.

50.     AltEn covenanted and warranted to AgReliant the following:

13(a) AltEn is engaged in the business of utilizing RRM and **has the requisite experience, knowledge and expertise, suitable facilities, qualified personnel and legal right to utilize the RRM supplied hereunder**.

(b) AltEn shall only use the RRM for the production of ethanol. All wet cake resulting from the production of ethanol shall be placed into bio-digesters or a biochar process for final destruction. Any RRM that is not used for ethanol production shall be destroyed at AltEn's expense. In no event shall the RRM be used for any other purpose. Further, waste products, including but not limited to wet cake, derived from the RRM shall not be used for any purpose inconsistent with treated corn seed.

(c) Time is of the essence in the disposal of RRM under this Agreement. **AltEn shall promptly utilize RRM in a safe and lawful manner**.

(d) In utilizing RRM, **AltEn shall comply with all applicable laws, ordinances, orders, rules, regulations and actions of the United States and of any state or political subdivision thereof or other governmental unit or agency**.

(e) AltEn has obtained and shall keep in effect all material permits, licenses and other forms of documentation required now or hereafter in order to comply with all such governmental laws, ordinances, orders, rules, regulations and actions; and that, upon request of and without charge to AgReliant, AltEn shall furnish AgReliant with copies thereof, together with any certificates or other instruments related to the performance by AltEn of its obligations under this Agreement.

(f) AltEn knows and understands information as to the character of the RRM and certain recommended precautions for exposure to and handling of the RRM. However, from time to time AgReliant may provide to AltEn advice regarding the nature of the RRM or the handling of RRM. AltEn shall advise and inform its employees, agents, representatives and subcontractors of the nature of the RRM and the potential hazards connected with it prior to such individuals' employment in connection with the handling of the RRM and **shall see that all appropriate safety and handling precautions are followed to ensure the safety and well-being of persons, property and the environment in the utilization of the RRM. AltEn agrees to inform AgReliant in writing of any toxic or otherwise hazardous property relating to the RRM which becomes known to AltEn subsequent to the date of this Agreement**. If AgReliant furnishes any comments, advice, or other assistance to AltEn with respect to the handling of RRM, whether or not at AltEn's request, AgReliant shall not be liable for, and AltEn assumes all risk of, such advice and the results thereof.

(AgReliant/AltEn Agreements, § 13(a)-(f)) (emphasis added).

51.     The AgReliant/AltEn Agreements also provide that AltEn assumes sole responsibility for, and will indemnify and hold harmless AgReliant, for damages, losses, costs and expenses (including reasonable attorneys' fees) arising out of, among other things, AltEn's use of the corn seed, its negligent acts or omissions, its failure to comply with applicable laws, and environmental contamination. (AgReliant/AltEn Agreements, § 14).

52.     Furthermore, Section 16 of the AgReliant/AltEn Agreements required AltEn to promptly notify AgReliant of, among other things, any material warning, notice of violation, or revocation of license or permit. (AgReliant/AltEn Agreements, § 16).

### Beck's Contract with AltEn

53.     Beck's and AltEn entered into a Destruction Service Agreement ("Beck's/AltEn Agreement") to govern the transfer of Beck's Seed to AltEn. A copy of the Agreement is attached as Exhibit 4.

54.     The Agreement provides that Beck's will supply certain quantities of Seed to AltEn for purposes other than planting and in a manner that complies with all applicable laws.

14

55.     Under the Beck's/AltEn Agreement, AltEn represents and warrants the following:

6(a) The Seed accepted from [Beck's] shall not be sold or offered for sale or any other use by [AltEn] within or outside the United States.

(b) The Seed accepted from [Beck's] shall not be used for food, feed, or seed.

(c) No co-products from the ethanol or destruction process shall be used for food, feed or seed purposes.

8. [AltEn] warrants and represents that it will comply with all applicable federal, state, and local laws along with the rules and regulations governing the transportation, handling, storage, and use. Without limiting the foregoing[,] [AltEn] warrants and represents that none of the seed will be used for planting, breeding, or research purposes.

**Winfield's Course of Dealing with AltEn**

56.     Winfield began doing business with AltEn in 2015.

57.     Though Winfield did not enter into an agreement governing the transfer of Winfield's seeds to AltEn, through their course of dealing, AltEn received Winfield seed that Winfield delivered periodically each year since their relationship began. Winfield and AltEn understood AltEn would use the Winfield seed for purposes other than planting, food, or seed and in a manner that complies with all applicable laws.

**AltEn's Improper Material Handling Practices**

58.     Not long after the AltEn Facility started producing ethanol in 2015, AltEn began storing wet cake in piles at various locations on the AltEn property, where it would be dried out before being land applied to cropland as a soil amendment.

59.     On October 23, 2018, AltEn applied to the Nebraska Department of Agriculture ("NDA") to register its distiller's grain byproduct as a soil conditioner, and AltEn received a label for such use.

60.     In the following months, NDA collected samples of AltEn's distiller's grain, and lab analysis showed elevated concentrations of pesticides.

61.     Based in part on the lab results, NDA determined the registered soil conditioner was adulterated and issued a Stop-Use and Stop-Sale Order that prohibited the distribution of AltEn's distiller's grain as a soil conditioner, and AltEn voluntarily cancelled the registration of its distiller's grain as a soil conditioner on August 14, 2019.

62.     AltEn continued to accept Seed from Pioneer, AgReliant, Beck's, Winfield, and other seed companies and produce ethanol after it received NDA's Stop-Use and Stop-Sale Order, without notifying Pioneer, AgReliant, Beck's, Winfield, and the other seed companies that government agencies were investigating AltEn's use and disposal of the waste and byproduct from ethanol production at the AltEn Facility.

63.     On September 23, 2019, NDEE issued a Notice of Violation ("NOV") to AltEn for waste disposal violations, including operating a solid waste management facility on its property without a permit, and prohibited AltEn from stockpiling the distiller's grain onsite and required disposal of the distiller's grain at a permitted solid waste management facility.

64.     After receiving the NOV, AltEn continued to stockpile distiller's grain onsite without submitting a disposal plan or having a solid waste management permit as ordered in the NOV.

65.     By February 2020, Green Disposal was also facing environmental violations and entered into a Consent Decree with NDEE to allow limited operation and testing of its biochar unit at the AltEn Facility. NDEE took samples of the material generated by the biochar in March 2021, and test results indicated that the biochar is contaminated with pesticides.

16

66.    On February 1, 2021, NDEE conducted a site visit and inspected three lagoons (West, Northeast, and Southeast Lagoons) at the AltEn Facility and found that each lagoon was operating in excess of its maximum operating depth and within the area designed for freeboard. NDEE also found that lagoon liners had not been repaired as required by the NOV and were badly damaged.

67.    On February 4, 2021, NDEE issued a Complaint and Order requiring AltEn to immediately cease discharge of industrial wastewater into its wastewater lagoons.

68.    In response to NDEE's Complaint and Order, AltEn shut down the AltEn Facility on February 8, 2021 and stopped its ethanol production.

### February 2021 Discharge Event

69.    On February 12, 2021, a frozen pipe on an anaerobic digester at the AltEn Facility ruptured, releasing waste materials consisting of thin stillage and manure from the four-million-gallon digester tank.  Hereinafter this release will be referred to as the "February 2021 Discharge Event."

70.    The discharge of these waste materials, which was uncontrolled and unpermitted, and flowed onto and off the AltEn Facility property into a drainage ditch and onto neighboring properties located as far as 4.5 miles from the digester tank.

71.    The two 4-million-gallon digesters at the AltEn Facility were designed to produce methane from two sources: (1) wet cake from the fermentation process; and (2) manure from the Mead Cattle feedlot.

72.    Mead Cattle's permits provided for expected flows to AltEn's methane digester, and AltEn's operating permits reflect the receipt of substantial flows of manure from Mead Cattle.

17

73.     The material released from one of the two digesters during the February 2021

Discharge Event was black in color, indicating it likely included manure from Mead Cattle.

74.     Subsequent testing of ten emergency lagoon sludge samples in October 2021

showed the presence of animal byproduct residues in AltEn's emergency lagoon. All emergency

lagoon samples contained fecal coliform indicating the presence of animal byproduct residues,

and more than 99% of saturated fat in lagoon samples was from sources other than soil-wet cake.

This indicates that the materials discharged from and stored in the emergency lagoon at the

AltEn Facility did not come from Pioneer's, AgReliant's, Beck's, or Winfield's Seed.

75.     On February 17, 2021, the NDEE issued a letter of non-compliance to AltEn,

instructing AltEn to undertake efforts to mitigate and cleanup the February 2021 Discharge

Event from the AltEn Facility.

76.     On February 20, 2021, after AltEn refused to address the discharge and was

otherwise nonresponsive to NDEE's mandates, NDEE issued an Emergency Order and

Complaint ("Emergency Order") requiring AltEn's immediate action to mitigate the discharge.

The Emergency Order also prohibited AltEn from resuming commercial and industrial

operations until the discharge had been sufficiently remediated and would not further threaten or

harm public health and the environment.

77.     On March 1, 2021, NDEE filed a Complaint against AltEn in the District Court of

Saunders County, Nebraska, for violating the Emergency Order and for violations of the

Nebraska Environmental Protection Act ("NEPA"), the Integrated Solid Waste Management Act

("ISWMA"), and permit conditions.

78.     On February 23, 2022, AltEn entered into a Consent Order with the NDEE in

NDEE Case Nos. 3540 and 3546. Pursuant to the Consent Order, AltEn is required to complete

18

certain compliance obligations for the AltEn Site. While AltEn has performed some activities as a result of the Consent Order, to date, AltEn and other Defendants have not conducted any substantial remediation measures.

### Corteva's, AgReliant's, Beck's, and Winfield's Response Following the February 2021 Discharge Event

79.     Following the February 2021 Discharge Event, NDEE engaged with Corteva, AgReliant, Beck's, Winfield, and other seed companies and requested assistance in responding to the environmental conditions at the AltEn Facility.

80.     AltEn's refusal to address the environmental conditions at the AltEn Facility compelled the seed companies to begin coordinating with NDEE and overseeing efforts to address the February 2021 Discharge Event and related conditions at the AltEn Facility.

81.     In early June 2021, Corteva on behalf of Pioneer, Beck's, AgReliant, and Winfield as part of the AltEn Facility Response Group ("AFRG"), signed a Memorandum of Agreement ("MOA") with NDEE regarding the implementation of response and stabilization measures at the AltEn Facility, which the AFRG has been funding to date.

### AltEn, Mead Cattle, and Green Disposal Abandoned the AltEn Facility and Their Cleanup Obligations

82.     While Corteva, AgReliant, Beck's, and Winfield have been engaged in response and stabilization activities at the AltEn Facility, AltEn, Mead Cattle, and Green Disposal have not undertaken any efforts to remediate or stabilize the AltEn Facility.

83.     Following the February 2021 Discharge Event, AltEn has had no regular or substantial presence at the AltEn Facility, nor has it taken responsibility for any site operations or maintenance activities, except to auction equipment and raw materials left on-site.

84.     AltEn began laying off their employees as early as February 2021, and at latest by April 2021, AltEn had laid off almost all employees and removed all on-site records, including drawings, procedures, and maintenance protocols.

85.     AltEn made no efforts to properly decommission the ethanol plant and leave the AltEn Facility in a safe and secure state.

86.     AltEn has abandoned large quantities of hazardous chemicals in tanks and/or piping within the AltEn Facility. These hazardous chemicals include combustible liquids, acids, and high pH materials that present aquatic, respiratory, and other hazards.

87.     AltEn has financially abandoned the AltEn Facility, including its debts and obligations to a growing list of vendors who are now approaching Corteva, AgReliant, Beck's, Winfield, and the other seed companies to take over AltEn's financial responsibilities. Several contractors have refused to perform remediation and stabilization work at the AltEn Facility due to nonpayment from AltEn.

88.     AltEn's and Mead Cattle's contractors have also left a large amount of treated Seed on the ground that has been washed off equipment, which will need to be managed and treated if exposed to rainfall and contributing additional volumes of storm water.

89.     AltEn was awarded more than $210,000 in COVID-19 relief money by the Nebraska Department of Economic Development in November 2020, just months before it shut down the AltEn Facility and financially abandoned the site.

90.     AltEn has failed to maintain the property by leaving storm damage unrepaired and not providing weed control, mowing, snow removal, or site security and failing to conduct inspections as required by the facilities' permits and applicable laws and regulations.

91.     AltEn has failed to pay any utility bills for the site, leaving Corteva, AgReliant, Beck's, Winfield, and the other seed companies to pay the gas and electric bills in order to perform the stabilization efforts at the AltEn Facility. The AFRG has also had to assume leases for office buildings and equipment while they stabilize the site.

92.     Corteva, AgReliant, Beck's, Winfield, and the other seed companies have encountered difficulties in obtaining timely responses from AltEn to sign permit applications required for stabilization activities.

93.     AltEn's contractors were performing demolition work and destroyed a silt fence around the biochar unit owned by Green Disposal that NDEE required AltEn to install to prevent further contamination. NDEE required the AFRG to re-install the silt fence.

94.     AltEn and other Defendants have demonstrated that they are not engaged in the remediation efforts at the AltEn Facility. AltEn and its employees are simply performing the occasional ministerial tasks of executing and exchanging documents with the AFRG and/or NDEE for various permitting obligations as set forth in the NDEE Consent Order.

**AltEn's, Mead Cattle's, Green Disposal's E3's, E3 Biofuels', Falcon Energy's, and Mead Acquisition's Improper Transfer of Assets**

95.     AltEn and the other Defendants have been and continue to be engaged in a systematic transfer of assets that has the effect of, and appears designed to, prevent creditors' access to assets that would be used to make good on the obligations of AltEn and the other entities.

96.     At least by June 2021, AltEn had sold more than eighty (80) pieces of equipment and parts used at the AltEn Facility, including semi-trucks, forklifts, stainless-steel piping, and electrical conduit, through BigIron Auctions, and continue to list items for sale to date.

97.     On or about February 14, 2022, AltEn representatives removed additional equipment from the AltEn Facility to sell at auction. AltEn has not contributed the sale proceeds from these auctions to site response efforts.

98.     AltEn's retention of auction companies, such as BigIron Auctions, to prepare AltEn's assets for auction have added to the burden of response activities for the Corteva, AgReliant, Beck's, Winfield, and the other seed companies, including in that at least one auction company power-washed equipment without using proper erosion/containment mitigation protection.

99.     In the spring of 2021, Shaw, on behalf of Mead Cattle, sold the feedlot to Champion Feeders of Texas ("Champion Feeders"). Mead Cattle completed this sale over the written objections of Corteva and another seed company.

100.    Proceeds in the amount of $2,640,000.00 from the sale of Mead Cattle, including additional funds held in escrow, were deposited into a checking account at Wells Fargo Bank, ending x7958, owned by E3 (the "E3 Bank Account").

101.    On May 25, 2021, the Saunders County Board granted a conditional-use permit to Champion Feeders to operate the Mead Cattle feedlot.

102.    On December 27, 2021, the President of AltEn, Tanner Shaw, notified NDEE that a company in Kansas, B. Cole Agriculture, purchased and agreed to remove the biochar from the AltEn Facility.

103.    On December 30, 2021, NDEE sent a letter to Shaw regarding the proposed disposition of biochar and labeling Shaw as "President, AltEn, LLC & Green Disposal Mead, LLC." Additionally, in a letter from Shaw to Thom Buell of NDEE dated November 12, 2021, Shaw signed as "President, AltEn, LLC" and wrote on behalf of Green Disposal Mead, LLC.

104.    AltEn did not disclose to B. Cole Agriculture that the biochar was contaminated with pesticides, and B. Cole Agriculture planned to apply the biochar to fields where it grows crops.

105.    After Nebraska Officials notified B. Cole Agriculture that the biochar was contaminated, B. Cole Agriculture backed out of its deal with AltEn, and AltEn's plan for disposing of the biochar, if any such plan exists, is now unclear.

106.    There are approximately 1,140 sacks of biochar remaining in the AltEn Facility's Hoop Building.

107.    On August 5, 2022, Shaw executed a "Joint Release Instruction/Flow of Fund Memorandum" as President of Mead Cattle, which instructed escrow funds of $120,000.00 be wired to the E3 bank account.

108.    There have been several transfers among the corporate Defendants over the last year to and from E3's accounts. E3 is dissipating available cash assets by making cash transfers to AltEn Operating Company, which in turn is being utilized to pay for Defendants' expenses, including professional fees (legal and accounting), payroll and employee benefits, consultants, bank charges, and vendors.

109.    Further, the principal office for AltEn (and multiple other AltEn entities and members, as set forth above in this Amended Complaint), which is a residential property located at the Quivira Mansion, was sold in or around August 2021 for millions of dollars under value by Dennis Langley (former manager of the corporate Defendants), and/or his assigns, beneficiaries, or representatives. None of these sale proceeds were contributed to site response efforts.

110.    Dissipation of assets has been mitigated by virtue of this Court's entry of a Preliminary Injunction on February 8, 2023. (Case No. 8:20-cv-70, Filing No. 103). The

Preliminary Injunction currently enjoins all Defendants and their parents, subsidiaries and/or affiliates, and any agent, servant, employee, attorneys, or other persons or entities in active convert or participation with them, from transferring, selling, moving or otherwise concealing any and all cash funds, assets, or any real and personal property currently belonging to the Defendants, including any such assets that may be obtained by the Defendants in the future.

### Defendants Are Liable to Corteva, AgReliant, Beck's, and Winfield Directly or through the Alter Ego Doctrine

111.     AltEn, Mead Cattle, Green Disposal, Platte River Green Fuels, E3, E3 Biofuels, AltEn Operating Company, Integrated, and Mead Acquisition (together, "Defendant Companies") are primarily owned and operated by Tanner Shaw and share numerous officers, addresses, and agents.

112.     The organizational structures of the companies owned or controlled by Tanner Shaw are, presumably by design, impossible to determine. There are dozens of AltEn-related entities, all of which constantly change names, places of incorporation, or become inactive. Upon information and belief, Shaw and other owners or members grossly undercapitalized the Defendant Companies.

113.     Upon information and belief, Shaw diverted funds from the Defendant Companies for his own improper uses.

114.     Upon information and belief, the Defendant Companies are mere facades for the personal dealings of Shaw and their operations are carried on by Shaw in disregard of the corporate entities.

115.     The Defendant Companies are the alter egos of Shaw, and the corporate veil should be pierced and Shaw held personally liable for all of the entities' actions.

24

116.    Upon information and belief, Shaw exercised his control over the Defendant Companies to commit a fraud against Plaintiffs.

117.    It would be an injustice to Plaintiffs if Shaw was permitted to perpetrate such a fraud to avoid paying Plaintiffs the amounts due and owing to it, and Shaw is therefore subject to personal liability for Plaintiffs' damages as alleged herein.

118.    Upon information and belief, Defendants Shaw and Platte River Green Fuels control AltEn to the point that it shows no separate corporate interest of its own.

119.    Upon information and belief, the same, or substantially the same, owners control the Defendant Companies, and their management and financing are so commingled that following the corporate form would lead to injustice.

120.    It would be an injustice to Plaintiffs if Defendant Companies were permitted to perpetrate such a fraud to avoid paying Plaintiffs the amounts due and owing to them, and Defendants Companies are therefore subject to liability for Plaintiffs' damages as alleged herein.

## COUNT I

### Breach of Contract against AltEn in Pioneer's Favor

121.    The foregoing paragraphs are incorporated as if fully stated herein.

122.    AltEn and Pioneer entered into an MOU under which Pioneer and its affiliates supplied certain Seed to AltEn for purposes other than for planting and for use in a manner that complies with all applicable laws.

123.    Pioneer has performed all the terms and conditions required under the MOU.

124.    Under the MOU, AltEn warrants and represents that: the Seed it accepts from Pioneer will not be used for food, feed, seed, or oil purposes; no co-products from the Seed will be used for food, feed, seed, or oil purposes; all Co-products derived from the Seed provided by

25

Pioneer will be used as a landfill cover or landfilled locally unless or until a Co-product use is approved as a part of AltEn's current and approved operating permits with the Nebraska Department of Environment and Energy; and it will comply with all applicable federal, state, and local laws along with the rules and regulations governing the transportation, handling, storage, and use.

125.    AltEn breached its contractual obligations to Pioneer, including by using the Seed and/or Co-products derived from the Seed provided by Pioneer and its affiliates for food, feed, seed, or oil purposes; not using Co-products derived from the Seed provided by Pioneer and its affiliates as a landfill cover or landfilled locally; and not complying with all applicable federal, state, and local laws.

126.    Pioneer has and will continue to suffer losses, expenses, costs, liability obligations, and damages as a direct and proximate cause of the unlawful and improper acts and contractual breaches of AltEn, its owners, contractors, officers, employees, representatives and agents in an amount to be determined at trial.

## COUNT II

### Breach of Contract against AltEn in AgReliant's Favor

127.    The foregoing paragraphs are incorporated as if fully stated herein.

128.    AltEn and AgReliant entered into the AgReliant/AltEn Agreements under which AgReliant supplied certain corn seed to AltEn for use by AltEn in the production of ethanol.

129.    AgReliant has performed all the terms and conditions required under the AgReliant/AltEn Agreements.

130.    As set forth above, under the AgReliant/AltEn Agreements, AltEn covenanted and warranted, among other things, that AltEn has the requisite experience, knowledge and

26

expertise, suitable facilities, qualified personnel and legal right to utilize the RRM supplied by AgReliant, AgReliant's corn seed shall only be used for the production of ethanol, any AgReliant Seed not used for ethanol production shall be destroyed at AltEn's expense, all wet cake resulting from the production of ethanol shall be placed into bio-digesters or a biochar process for final destruction, AltEn shall promptly utilize AgReliant Seed in a safe and lawful manner and to ensure the safety and well-being of persons, property and the environment in the utilization of AgReliant corn seed, to inform AgReliant in writing of any known toxic or otherwise hazardous property, and to comply with all applicable laws.

131.    AltEn was also obligated to notify AgReliant of citations and claims as required by Section 16 of the AgReliant/AltEn Agreements.

132.    AltEn breached these and other contractual obligations and express warranties to AgReliant, including without limitation by using the corn seed and/or by-products derived from the corn seed provided by AgReliant for purposes other than ethanol production; not properly destroying and disposing the corn seed per contract terms; using the corn seed and/or by-products in a manner inconsistent with safe and lawful practices; failing to inform AgReliant of the toxic or hazardous conditions at the AltEn Facility; and not complying with all applicable federal, state, and local laws.

133.    In addition, AltEn failed to comply with the provision in Exhibit A of the AgReliant/AltEn Agreements regarding the required recycling method, and which required AltEn to obtain AgReliant's pre-approval for alternative recycling methods for processing distiller's grain and thin stillage.

134.    AgReliant has and will continue to suffer losses, expenses, costs, liability obligations, and damages as a direct and proximate cause of the unlawful and improper acts and

27

contractual breaches of AltEn, its owners, contractors, officers, employees, representatives and agents in an amount to be determined at trial.

## COUNT III

### Breach of Contract Against AltEn in Beck's Favor

135.    The foregoing paragraphs are incorporated as if fully stated herein.

136.    AltEn and Beck's entered into the Beck's/AltEn Agreement under which Beck's supplied certain Seed to AltEn for purposes other than planting and for use in a manner that complies with all applicable laws.

137.    Beck's has performed all the terms and conditions required under the Beck's/AltEn Agreement.

138.    Under the Beck's/AltEn Agreement, AltEn warrants and represents that: the Seed accepted from Beck's will not be used for food, feed, or seed; no co-products from the ethanol or destruction process shall be used for food, feed of seed purposes; and it will comply with all applicable federal, state, and local laws along with the rules and regulations governing the transportation, handling, storage, and use.

139.    AltEn breached its contractual obligations to Beck's, including by using the Seed and/or Co-products derived from the Seed provided by Beck's for food, feed, seed, or oil purposes; not using Co-products derived from the Seed provided by Pioneer and its affiliates as a landfill cover or landfilled locally; and not complying with all applicable federal, state, and local laws.

140.    Beck's has and will continue to suffer losses, expenses, costs, liability obligations, and damages as a direct and proximate cause of the unlawful and improper acts and contractual

28

breaches of AltEn, its owners, contractors, officers, employees, representatives and agents in an amount to be determined at trial.

## COUNT IV

### Breach of Contract Against AltEn – Contractual Indemnity in Pioneer's Favor

141.    The foregoing paragraphs are incorporated as if fully stated herein.

142.    The MOU between AltEn and Pioneer provides that AltEn agrees to indemnify Pioneer for any damages resulting from AltEn's non-performance of the MOU.

143.    Paragraph 9 of the MOU states, in relevant part:

> User shall indemnify and hold harmless the Supplier, its officers, directors, employees, agents, successors, and assigns and all those identified in interest therein from any and all fines, suits claims, liabilities, losses, damages, injuries, penalties, costs, and expenses either to person or property which may be incurred by or imposed upon User an arising out of or related in any manner to the non-performance of this MOU by User.

144.    On March 1, 2021, Corteva, on behalf of Pioneer, sent an indemnification notice letter to AltEn reiterating AltEn's contractual obligation to indemnify it for its costs relating to any environmental claims that have arisen, or may arise, with respect to AltEn's operations in Mead, Nebraska.

145.    AltEn did not respond to Corteva's indemnification letter and has not otherwise addressed its contents with Corteva.

146.    AltEn breached its contract with Pioneer by failing and/or refusing to comply with its indemnification obligations.

147.    Pioneer have and will continue to suffer losses, expenses, costs, liability obligations, and damages as a direct and proximate cause of the unlawful and improper acts and contractual breaches of AltEn, its owners, contractors, officers, employees, representatives and agents in an amount to be determined at trial.

## COUNT V

**Breach of Contract Against AltEn – Contractual Indemnity in AgReliant's Favor**

148.    The foregoing paragraphs are incorporated as if fully stated herein.

149.    The AgReliant/AltEn Agreements between AltEn and AgReliant provide that AltEn agrees to, among other things, indemnify and hold harmless AgReliant for use of the corn seed, AltEn's (or its employees or agents) negligent acts or omissions, its failure to comply with applicable laws, and environmental contamination.

150.    AltEn is aware of its indemnity obligations to AgReliant and the facts giving rise to AltEn's indemnity obligations as set forth herein.

151.    AltEn has failed to and refused to indemnify and hold harmless AgReliant for the foregoing conduct as required by the AgReliant/AltEn Agreements.

152.    AltEn breached its contractual obligations to AgReliant by failing and/or refusing to indemnify AgReliant.

153.    AgReliant has and will continue to suffer losses, expenses, costs, liability obligations, and damages as a direct and proximate cause of the unlawful and improper acts and contractual breaches of AltEn, its owners, contractors, officers, employees, representatives and agents in an amount to be determined at trial.

## COUNT VI

**Declaratory and Injunctive Relief on Voidable Transfers Pursuant to the Nebraska Uniform Voidable Transactions Act ("UVTA"), Neb. Rev. Stat. § 36-801 to 36-815**

154.    The foregoing paragraphs are incorporated as if fully stated herein.

155.     Pioneer, Corteva, Beck's, AgReliant, and Winfield are Creditors of Defendants because they have the legal and/or equitable right to payment from them.

156.    AltEn has ceased operations at the AltEn Facility and sold the majority of its assets. Mead Cattle has sold the majority of its assets at auction and subsequently sold the Mead Cattle feedlot to Champion Feeders of Hereford, Texas.  Upon information and belief, Defendants similarly are or were liquidating their assets.

157.    Defendants collectively or separately, have not dedicated liquidation proceeds, or any other funds, to respond to the demands of the NDEE and for remediation of the site.

158.    Upon information and belief, since at least the time of the February 2021 Discharge Event, Defendants have been constructively insolvent as defined by Neb. Rev. Stat. § 36-805(a)(2).

159.    Upon information and belief, since at least the time of the February 2021 Discharge Event, Defendants have been and are actually insolvent within the meaning of Neb. Rev. Stat. § 36-806.

160.    Since at least the time of the February 2021 Discharge Event, the officers, directors, and members of Defendants, in making transfers of assets of those entities without consideration would have known that the effect of the transfers would be to hinder, delay, or defraud the creditors of those entities within the meaning of Neb. Rev. Stat. § 36-805(a).  Such transfers would include, but are not limited to, distributions (including the proceeds of liquidation) to the members of the Defendants limited liability companies.

161.    Any such transfers as alleged in the preceding paragraph would be marked with the "badges of fraud" that assist in determining the actual intent to hinder, delay, or defraud, as those badges are specified in Neb. Rev. Stat. § 36-805(b), which include:

> a.    Such transfers to members would be to insiders of the debtors. Neb. Rev. Stat. § 36-805(b)(1).

31

b.  Such transfers would have been concealed to creditors of the debtors. Neb. Rev. Stat. § 36-805(b)(3).

c.  Such transfer would have occurred after the debtors were sued or threatened with suit.  Neb. Rev. Stat. § 36-805(b)(4).

d.  Such transfers would have occurred after the debtors removed or concealed assets.  Neb. Rev. Stat. § 36-805(b)(7).

e.  Such transfers would have occurred after the debtors were insolvent. Neb. Rev. Stat. § 36-805(b)(8).

162.    Accordingly, any such transfers are voidable under Nebraska law, and any present or future transfers of like kind will be voidable.

163.    Pioneer, Corteva, Beck's, AgReliant, and Winfield request a declaration of this Court that all transfers of  Defendants' assets following the February 2021 Discharge Event for less than reasonably equivalent value, including distributions to members of the debtor limited liability companies, are void under Nebraska law.

164.    Pioneer, Corteva, Beck's, AgReliant, and Winfield further request a declaration of this Court than any distributions to the members of the debtor limited liability companies or to Shaw following the February 2021 Discharge Event constitute transfers made with the actual intent to hinder, delay, or defraud creditors of the debtor limited liability companies.  Such distributions include but are not limited to distributions to Defendant Platte River Green Fuels.

165.    An actual, present, and justiciable controversy exists as, upon information and belief, the debtor limited liability companies and Shaw deny that transfers they have made since the February 2021 Discharge Event are voidable under the Nebraska UVTA.

166.    Plaintiffs lack information and belief as to additional recipients of the alleged voidable transfers but will seek leave to amend this Amended Complaint to add them as parties.

167.    Plaintiffs herein seek an injunction against Defendants prohibiting further dispositions of any assets transferred or of other property pursuant to Neb. Rev. Stat. § 36-808(a)(3)(i).

## COUNT VII

**Common Law Indemnity against All Defendants in Favor of All Plaintiffs**

168.    The foregoing paragraphs are incorporated as if fully stated herein.

169.    Pioneer, Corteva, Beck's, AgReliant, and Winfield have sustained losses, expenses, costs, liability obligations, and damages as a result of the unlawful and improper acts of Defendants and their owners, contractors, officers, employees, representatives and agents.

170.    One or more of the Defendants are obligated to indemnify Pioneer, Corteva, Beck's, AgReliant, and Winfield for the loss, expenses, costs, liability obligations and damages it has sustained, plus any additional damages Pioneer, Corteva, Beck's, AgReliant, and Winfield may suffer in the future in connection with this matter.

## COUNT VIII

**Contribution to All Plaintiffs against All Defendants**

171.    The foregoing paragraphs are incorporated as if fully stated herein.

172.    Pioneer, Corteva, Beck's, AgReliant, and Winfield have sustained loss, expenses, costs, liability obligations, and damages as a result of the unlawful and improper acts of Defendants and their owners, contractors, officers, employees, representatives and agents.

173.    One or more of the Defendants are obligated to contribute to the loss, expenses, costs, liability obligations, and damages sustained by Pioneer, Corteva, Beck's, AgReliant, and

Winfield in an amount to be proven at trial related to sums paid by Pioneer, Corteva, Beck's, AgReliant, and Winfield to clean up the AltEn Facility site, plus any additional damages Pioneer, Corteva, Beck's, AgReliant, and Winfield may suffer in the future in connection with this matter.

## COUNT IX

### Equitable Subrogation to All Plaintiffs against All Defendants

174.    The foregoing paragraphs are incorporated as if fully stated herein.

175.    AltEn is responsible for various errors and omissions regarding the construction and design of the AltEn Facility.

176.    As a result, the Pioneer, Corteva, Beck's, AgReliant, and Winfield have incurred damages in an amount to be proven at trial related to sums paid by the seed companies to clean up the AltEn Facility. The damages Pioneer, Corteva, Beck's, AgReliant, and Winfield have incurred and may continue to incur were proximately caused by AltEn not by any active negligence of Pioneer, Corteva, Beck's, AgReliant, and/or Winfield.

177.    Pioneer, Corteva, Beck's, AgReliant, and Winfield are entitled to assert a right of subrogation against one or more of the Defendants in an amount to be proven at trial related to sums paid by Pioneer, Corteva, Beck's, AgReliant, and Winfield to clean up the AltEn Facility, plus any additional damages Pioneer, Corteva, Beck's, AgReliant, and Winfield may suffer in the future.

## COUNT X

### Unjust Enrichment Favoring All Plaintiffs against All Defendants

178.    The foregoing paragraphs are incorporated as if fully stated herein.

179.    Pioneer, Corteva, Beck's, AgReliant, and Winfield have incurred and continue to incur costs to respond to environmental conditions and stabilize the AltEn Facility because

Defendants abandoned their duty to address the environmental conditions that they created at the AltEn Facility. This conferred a benefit upon Defendants because Defendants have been able to profit from Pioneer's, Corteva's, Beck's, AgReliant's, and Winfield's efforts and to avoid contributing to cleanup costs caused by Defendants' actions. Pioneer, Corteva, Beck's, AgReliant, and Winfield acted with the intent to be reimbursed by Defendants for the benefits Defendants received through their actions.

180.    Defendants are aware of and have retained those benefits.

181.    It would be inequitable for Defendants to retain these benefits without properly compensating Pioneer, Corteva, Winfield and Beck's for the costs they have incurred to respond to conditions Defendants created and stabilize the AltEn Facility.

182.    One or more of the Defendants in justice and fairness should compensate Pioneer, Corteva, Beck's, AgReliant, and Winfield for the sums paid by Pioneer, Corteva, Beck's, AgReliant, and Winfield paid to address the environmental conditions created at the AltEn Facility.

## COUNT XI

### Fraud in the Inducement Favoring Plaintiff Winfield against All Defendants

183.    The foregoing paragraphs are incorporated as if fully stated herein.

184.    At the time Winfield began delivering seed to AltEn, and throughout Winfield's relationship with AltEn, representatives of AltEn represented and warranted to Winfield that AltEn would properly handle, store, and otherwise manage Winfield's seed and the byproducts from the seed Winfield supplied consistent with federal and state laws

185.    AltEn made representations and warranties that it would properly handle, store, and otherwise manage Winfield's seed with the knowledge that such representations were false and with the intent to induce Winfield's reliance on such representations and warranties.

186.    Winfield justifiably relied on AltEn's representations and warranties as set forth in paragraph 47 above to its detriment, as AltEn, and those working in concert with it, have violated federal and state laws in the storage and handling of Winfield's seed as set forth in detail in the paragraphs above.

187.    As a proximate result of AltEn's false representations and warranties, Winfield has suffered damages in excess of $75,000, exclusive of interest and costs, the exact amount of which to be proven at trial.

## COUNT XII

### Promissory Estoppel Favoring Plaintiff Winfield against All Defendants

188.    The foregoing paragraphs are incorporated as if fully stated herein.

189.    Throughout the time Winfield delivered its seed to AltEn, representatives of AltEn have represented and warranted to Winfield that AltEn would properly handle, store, and otherwise manage Winfield's seed and the byproducts from the seed Winfield supplied in a manner consistent with federal and state laws.

190.    Winfield relied, to its detriment, on AltEn's representations and warranties as set forth in paragraph 47 above to its detriment, as AltEn, and those working in concert with it, have violated federal and state laws in the storage and handling of Winfield's seed as set forth in detail in the paragraphs above.

191.   AltEn should have reasonably foreseen that Winfield would rely on AltEn's representations and warranties that it would handle, store, and otherwise manage Winfield's seed in a manner consistent with federal and state law.

192.   By reason of AltEn's representations and warranties, on which Winfield has relied to its detriment, AltEn is estopped from denying its duties and obligations to deliver its promises to properly handle, store, and otherwise manage Winfield's seed and the byproducts from the seed Winfield supplied consistent with federal and state laws.

193.   AltEn has breached its promises to properly handle, store, and otherwise manage Winfield's seed and the byproducts from the seed Winfield supplied consistent with federal and state laws.

194.   As a proximate result of AltEn's breaches, Winfield has suffered damages in excess of $75,000, exclusive of interest and costs, the exact amount of which to be proven at trial.

## COUNT XIII

### Negligence Against AltEn, Integrated, and Shaw

195.   The foregoing paragraphs are incorporated as if fully stated herein.

196.   AltEn, Integrated, and their agents, including Shaw, had a duty to properly handle, store, and otherwise manage the seed and the byproducts from the ethanol manufacturing process and a duty to ensure compliance with applicable laws, rules, and regulations.

197.   AltEn, Integrated, and their agents, including Shaw, breached that duty, and Plaintiffs suffered damages as a proximate result, through the acts and omissions, which include but are not limited to the following:

a. Improperly debagging, storing, and/or disposing of wet cake at the AltEn Facility;

b. Improperly handling and utilizing contaminated grain byproduct as a soil conditioner at the AltEn Facility;

c. Improperly handling contaminated biochar that was generated by AltEn's operations at the AltEn Facility;

d. Failing to maintain lagoons containing untreated water located on the AltEn Facility property at or below the maximum operating water depth;

e. Failing to maintain the liners in the lagoons at the AltEn Facility in a safe condition;

f. Failing to maintain the digesters at the AltEn Facility in order to prevent the emergency release that occurred on February 12, 2021;

g. Failing to safely winterize the ethanol process plant and piping and the chemical inventory abandoned at the AltEn Facility;

h. Failing to properly manage and dispose of solid waste and comply with other applicable laws and regulations related to protection of land and water from contamination; and,

i. Operating a solid waste management facility on its property without a permit.

198.   As a direct and proximate result of the negligence AltEn, Integrated, and their agents, including Shaw, Plaintiffs have incurred, and/or will incur in the future, losses, expenses, costs, and damages in an amount to be proven at trial.

199.     AltEn, Integrated, and their agents, including Shaw, are vicariously liable for the actions and/or inactions of one another, as well as AltEn's employees and/or agents, pursuant to the doctrine of respondeat superior, all theories of agency, and/or all theories of joint venture.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury for all issues that may be triable by jury in this action.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request relief as follows:

1.     Judgment entered in favor of Plaintiffs and against Defendants on Counts I–XIII of Plaintiffs' Complaint and an award of compensatory and other damages alleged herein in amounts to be determined by the finder of fact;

2.     A declaration of this Court that all transfers of Defendants' assets following the February 2021 Discharge Event for less than reasonably equivalent value are void under Nebraska law;

3.     An injunction enjoining and restraining Defendants from further transferring their assets to avert the likelihood of further injury to Plaintiffs during the pendency of this action and to preserve the possibility of effective final relief;

4.     An award of pre-judgment interest, attorney fees, costs and post-judgment interest in favor of Plaintiffs and against Defendants;

5.     All further legal and equitable relief as the Court may deem just and proper.

DATED this 31st day of May, 2023.

Respectfully submitted,

/s/ Todd W. Weidemann A
Todd W. Weidemann, Neb. No. 20505

WOODS AITKEN LLP
10250 Regency Circle, Ste. 525
Omaha, Nebraska 68114
Telephone: (402) 898-749
Fax: (402) 898-7401
tweidemann@woodsaitken.com

Abigail R. Frame, Colo. No. 52901
WOODS AITKEN LLP
7900 E. Union Avenue, Suite 700
Denver, Colorado 80237
Telephone: (303) 606-6700
Fax: (303) 606-6701
*Local Counsel for Pioneer Hi-Bred
International, Inc.; Corteva Agriscience,
LLC; AgReliant Genetics, LLC; Beck's
Superior Hybrids, Inc.; and Winfield
Solutions, LLC*

By: */s/ Thomas F. Koegel*
Thomas F. Koegel, Cal. No. 125852.
**CROWELL & MORING LLP**
3 Embarcadero Center
26th Floor
San Francisco, CA 94111
Tel: (415) 365-7858
Fax: (415) 986-2827
Email: tkoegel@crowell.com
(application for admission pro hac vice
forthcoming)
*Attorney for Plaintiffs Pioneer Hi-Bred
International, Inc. and Corteva
Agriscience, LLC*

By: */s/ Kirsten L. Nathanson*
Kirsten L. Nathanson, DC No. 463992
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue NW
Washington., D.C. 20004
Tel: (202) 624-2887
Fax: (202) 628-5116
Email: knathanson@crowell.com
(application for admission pro hac vice
forthcoming)

*Attorney for Plaintiffs Pioneer Hi-Bred International, Inc. and Corteva Agriscience, LLC*

By: */s/ J Jackson and B. Andrew Brown*
J Jackson, MN Bar No. 49219
B. Andrew Brown, MN Bar No. 0205357
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone: (612) 340-2600
jackson.j@dorsey.com
brown.andrew@dorsey.com
(application for admission pro hac vice forthcoming)
*Attorneys for Plaintiff Winfield Solutions, LLC*

*/s/ Anthony C. Sallah*
Anthony C. Sallah (MI Bar No. P84136)
**BARNES & THORNBURG, LLP**
171 Monroe Ave., NW, Suite 1000
Grand Rapids, Michigan 49503
P: (616) 742-3930
asallah@btlaw.com
(application for admission pro hac vice forthcoming)
*Attorneys for Plaintiff AgReliant Genetics, LLC*

*/s/ Amy Berg and Robert A. Jorczak*
Amy Berg, Ind. No. 32513-32
Robert A. Jorczak, Ind. No. 32027-29
ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN  46282-0200
(317) 236-2100 (Telephone)
(317) 592-4790 (Fax)
email:  amy.berg@icemiller.com
email:  louie.jorczak@icemiller.com
(application for admission pro hac vice forthcoming)
*Attorneys for Plaintiff Beck's Superior Hybrids, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the _____ day of _____ 2022, the foregoing was served in

accordance with Rule 5, Federal Rules of Civil Procedure, to all counsel of record:



/s/

_____